(Decided 17th December, 1869.)

JOHN ESCHBACH vs. JANE LIGHTNER, GEORGE W. AS-PRIL and FANNY J. ASPRIL, his wife, and SAMUEL APPOLD.

*Production of Books and Papers—Proceedings under Art. 16, Sections 20 and 21 of the Code of Public General Laws.*

E filed a creditor's bill against the administrator and heirs of L, to charge the estate for debts claimed to be due.  The defendants answered deny-ing the indebtedness.  After replication and issue of indebtedness *vel non* thus made up, E filed two petitions, alleging that L had been his agent, and as such had kept books containing accounts of moneys re-ceived as such agent; that these books were in the possession of the defendants; and praying a discovery and production of the books. ·HELD:

1st. That the power given by Art. 16, secs. 20 and 21, of the Code, to require the production of books and papers, is to be exercised with cau-tion; but in a proper case calling for its exercise, it should be exerted without hesitation.

2d. The existence of the books or papers called for must appear from the· bill or answer, or be shown in the course of the proceedings, and they must also be in the possession or under the control of, the party re-quired to produce them.

3d. They should be designated with a reasonable degree of certainty, and the facts expected to be proved by them must be stated, so that they

Eschbach *vs.* Lightner, *et al.*

may appear to be pertinent to the issue, or relative to the matters in dispute.

4th. The party requiring their production must also show that he has some interest in them, for if they relate solely to the case or defence of the opposite party, or merely contain accounts or entries which he has kept or made for his own security, he cannot be called upon to produce them.

5th. The averment in the petition, if true, of the existence of the relation of principal and agent between L and the complainant, shows such an interest in the accounts kept by the former, as such agent, as to entitle the latter to the books or certified copies therefrom, of the affairs of the agency in dispute.

6th. There was no necessity for an amendment of the bill to obtain a discovery of the books or accounts of the agency, and there is no objection to their production being required by a petition.

7th. If, in answer, the defendants deny on oath, in positive and direct terms, there was any such relation of principal and agent as charged, or that any books containing accounts of the agency transactions kept by the deceased are in their possession or under their control, the answer, if believed by the Court, concludes the question, and no order for production will be passed.

8th. If the answer to the discovery shows that separate books of the agency transaction were kept, then the production of the originals will be required; but if these accounts are contained in the same books with other accounts, then the order should be in the alternative to produce the original books, or certified copies of parts of their contents.

APPEAL from the Circuit Court of Baltimore City.

The facts are sufficiently detailed in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ROBINSON, J.

*Geo. H. Williams*, for the appellant.

The petitions for discovery and production of books should have been granted; the petition for discovery is one thing—the production of books discovered is another.

In any Chancery cause, petitions and interrogatories to be answered under oath, can be respectively exhibited by either party against the other. Books cannot be named otherwise than calling them ledgers, &c.; and if an agent keeps books containing his principal's accounts, they are to that extent the principal's books also, and he has at least a right to discovery of them.

Here the petition showed an interest in the books—that they were not fishing—that the accounting was wholly confided to the deceased; that they would show the items placed by way of set-off were not due; that an accounting was under the pleadings necessary; and of course as the accounting was wholly confided to deceased, his books contained not only material and necessary evidence, but the complainant could not safely go to trial without them. It was a right existing for the purpose of discovery alone. *Adams' Equity*, 12, 13 (*margin*).

In fact, the Court's decree and opinion showed that necessity. The complainant having in life confided accounts to Lightner, could not prove accounts without *Lightner's books;* he was not permitted to prove *his books*, or to have *them*, and had his bill dismissed, because he could not give *this proof.* Of what avail then is Art. 16, secs. 20 and 21 of the Code? *Jones vs. Magill*, 1 *Bland*, 196, note; *Norwood vs. Norwood*, 2 *Bland*, 471; *Williams vs. The Savage Manufacturing Co.*, 3 *Md. Ch. Dec.*, 430; *Duvall vs. Farmers' Bank*, 2 *Bland*, 686.

The petition for discovery, verified by affidavit, stating an agency, the answer to the petition *not denying the agency*, complainant had *de jure*, a right of access to and inspection of them, in whosesoever custody they might be. *Pulling on Mercantile Accounts* (57 *Law Library*), 108, 110 and 111 (*margin*), and cases there cited.

*William S. Waters*, for the appellee.

The prayer of the petition cannot be granted in Mary-

land in any case, except when the books are the common property of both parties. This is the case of an ordinary creditor, and such an order as that prayed for can never be passed in favor of a mere creditor. *Act of* 1798, *chap.* 84, *Kilty; Williams vs. Savage Manufacturing Co.,* 3 *Md. Ch. Dec.,* 429; *Williams & Bradford vs. Williams,* 1 *Md. Ch. Dec.,* 201; *Strike's Case,* 1 *Bland,* 90, *note; Duvall vs. Farmers' Bank,* 2 *Bland,* 686; *Code,* " *Chancery Books and Papers.*"

The allegations of the petition are not sufficient to require the production of books, or the copies thereof, " according to the Code." The books are not specifically described or identified.

In the English practice, under the circumstances, books and papers would not be ordered to be produced. In such practice there must be an admission in the answer that the defendant has the books; and in all cases he is allowed to seal up the parts of the books which he considers do not apply. This last provision of the English practice we retain by allowing the defendant to set out copies. *Evans vs. Richardson,* 1 *Swanston,* 7; *Micklethwait vs. Moore,* 3 *Mer.,* 292; 2 *Maddock's Chancery Practice,* 391-396; *Barnett vs. Noble,* 1 *Jac. & Walker,* 227; *Purcell vs. Macnamara,* 13 *L. L. Wigram Dis.,* 209; *Story's Eq. Pl.,* sec. 360.

In the English practice, unless the books are referred to in the answer, the bill must be amended so as to require them to be set out in the answer. No discovery can be had on an interlocutory petition. (*See cases above.*)

But in this State, the party is entitled only to obtain books and papers, according to the terms pointed out in the Code, and a case under the Code has not been presented, and even if presented, the order would be in the alternative. Any other mode would do injustice to the party ordered to produce the books and papers. 1 *Greenleaf on Evidence,* s. 563; *Morrison vs. Whiteside,* 17 *Md.,* 459.

MILLER, J., delivered the opinion of the Court.

The appeal from the final decree, dismissing the bill, presents for review the propriety of the previous interlocutory orders passed upon the petitions of the complainant for discovery and the production of books. The English Chancery practice on this subject has, to some extent, been modified by statutory provisions in this State. By the Code, Art. 16, secs. 20, 21, power is conferred upon the Courts of Equity, on the application of either party on the trial of any actions at law, or suits in chancery, either for discovery *or relief*, to require and decree that the parties shall produce either the original books, writings, or papers, or copies certified by a justice of the peace, of all such parts of such books or papers in their possession or power, as contain evidence pertinent to the issue, or relative to the matters in dispute between the parties, to be used as evidence at the trial of such cause, provided the party making the application shall satisfy the Court, on oath or affirmation, that such books, writings, or papers, contain material and necessary evidence, and that he cannot safely proceed to the trial of his case without the benefit of such testimony, and if the party required to produce shall fail to obey the order to that effect, the Court may, in its discretion, take the allegations of the bill *pro confesso*, and decree *ex parte* in such manner as shall appear just and reasonable.

These provisions have not, as far as we are informed, ever been construed by the Appellate Court. In many respects they are plain and need no interpretation. The former Chancellors of the State have very properly said the power thus given is to be exercised with caution. It is, however, a power wisely conferred and in a proper case calling for its exercise should be exerted without hesitation. There are certain general rules governing its exercise in an equity suit, about which there can be no doubt. The existence of the books or papers called for must ap-

pear from the bill or answer, or be shown in the course of the proceedings, and they must also be in the possession or under the control of the party required to produce them. They should be designated with a reasonable degree of certainty, and the facts expected to be proved by them be stated so that they may appear to be pertinent to the issue or relative to the matters in dispute. The party requiring their production must also show that he has *some interest* in them; for if they relate solely to the case or defence of the opposite party, or merely contain accounts or entries which he has kept or made for his own security, he cannot be called upon to produce them, because in such case if admissions are sought for, they must be obtained by calling the party to the stand as a witness, or probing his conscience by interrogatories in a bill of discovery directed to that especial end.

In the present case a creditors' bill was filed by the appellant against the administrators and heir at law of William P. Lightner, deceased. It charges an indebtedness from the deceased to the complainant of $8,555.50, made up of a balance due on an account stated on the 1st of November, 1865, of the amount of four promissory notes of the deceased in favor of the complainant and of cash loaned. The account and the notes are filed as exhibits with the bill. It also charges that the personal estate of the deceased is insufficient to pay his debts, and prays for a discovery of the real estate, for an account of the personal estate, and of the debts due to the complainant and others, and the application of the personalty to their payment, for a sale of the real estate to supply the deficiency, and for general relief. The defendants deny the alleged indebtedness, and aver that they have always understood from the deceased that the complainant was largely indebted to him; that among the papers of the deceased they find and exhibit with their answer certain evidences of debt against the complainant consisting of a

number of notes, drafts, and checks, amounting to $17,400, and that complainant was further indebted to the deceased in the sum of $3,242.13, for matters properly chargeable in account, as will appear by an account filed with their answer, and that for all this indebtedness they have instituted a suit at law against the complainant.

After replication and issue of indebtedness *vel non* thus made up, two petitions were filed by the complainant, alleging in substance that Lightner, for many years prior to his death, was the agent of the complainant for the collection of a large amount of paving bills, and confiding in him as such agent the complainant intrusted to him the keeping of the accounts thereof; that Lightner kept books which are now in the possession of the defendants, in which such accounts are to be found, showing each of the items of indebtedness as charged in the bill, and that the same still remain due, and that there are no such items of set-off as claimed in the answer; and praying for a discovery whether there are not such books in existence, and in the defendants' possession, and for a specification of what they are, and for an order that they may be produced to be used in evidence.

The defendants, in answer to these petitions, do not deny in direct terms the fact of the agency as charged, or that no books were kept by Lightner containing accounts of the transactions relating to the agency, or that such books are in their possession or under their control. They deny that the deceased kept books of account by which the respective items of each and all of the complainant's claim will appear, as will show that they remain due, or will show that no part of the defendants' set-off is due, and they also deny that they have in their possession any books that show the indebtedness of deceased to complainant as charged in the bill. This denial does not meet the scope and extent of the discovery sought by the petitions. This was avoided by the objec-

tion, which the Court sustained, that the complainant had no right to ask a discovery by means of an interlocutory petition, and if there was any ground of discovery against them, it ought to have been set forth in the bill, or the bill ought to be amended for the purpose. The petitions were accordingly dismissed without requiring an answer to the discovery sought. In this we are of opinion there was error. The averment, if true, of the existence of the relation of principal and agent between Lightner and the complainant, shows such an interest in the accounts kept by the former, as such agent, as to entitle the latter to the production of the books or certified copies therefrom of all accounts of the affairs of the agency relating to the matters in dispute in this case. There is no necessity for an amendment of the bill to obtain a discovery of the books or accounts of the agency. The law authorizes the application to be made where the bill asks for *relief alone,* and there can be no possible objection in such a case, if sufficient interest in the books or accounts whose production is sought exists, to require by petition a discovery whether such books or accounts have been kept and are in the party's possession, as a foundation for the application to produce them. Indeed the law seems to contemplate a discovery in this mode. If in answer the defendants deny on oath, in positive and direct terms, that there was any such relation of principal and agent as charged, or that any books containing accounts of the agency transactions were kept by the deceased, are in their possession or under their control, then the answer, if believed by the Court, concludes the question. No order for production can then be passed. But if the answer be equivocal or evasive, the judgment of the Court, regulated by the ordinary rules of evidence, must be applied in determining whether it is credible or not. No positive rule in the abstract can be laid down on such a point. *Wigram on Discovery,* 207, 208.

But for the error in the orders upon the petitions the final decree dismissing the bill would have been affirmed, for we entirely agree with the Court below, that the evidence which was taken in the case fails to establish any indebtedness of the deceased to the complainant. The latter, however, as we have said, was entitled to a specific and positive answer to the discovery asked in his petitions, and there was error in the orders dismissing them without requiring such answer. Whether the order should be in the alternative to produce the original books or certified copies of parts of their contents will depend on the character of the answer to the discovery. If this shows that separate books of the agency transactions were kept, then it will be proper to require the production of the originals; but if accounts of this nature are contained in the same books with other accounts of the deceased, then it will be proper that the order should be in the alternative.

. The final decree, and the orders dismissing the appellant's petitions will be reversed, and the cause remanded that an answer may be had to the discovery sought, and such further proceedings taken thereon as we have herein indicated.

*Decree and orders reversed and cause remanded.*

(Decided 18th December, 1869.)