WILLIAM ARTHUR WISE *v.* THE WESTERN UNION TELE-GRAPH COMPANY, a corporation of the State of New York.

*(April* 2, 1935.)

RODNEY and REINHARDT, J. J., sitting.

*James R. Morford* (of Marvel, Morford, Ward and Logan) for plaintiff.

*William S. Potter* (of Ward and Gray) for defendant.

Superior Court for New Castle County, No. 34, November Term, 1932.

RODNEY, J., delivering the opinion of the Court:

The application of the plaintiff, we think, rests in the sound legal discretion of the Court. It is unnecessary for us to consider the limitations existing at common law respecting the production of documents nor to trace the development of equitable Bills of Discovery, nor the statutory equivalents therefor. It is sufficient that the Delaware statute expressly grants to this Court that plenary power theretofore exclusively exercised by the Court of Chancery as to the production of documents.

Our first difficulty arises from the manner in which the questions are here presented. The affidavit expresses ignorance as to whether the written statements desired to be produced were made (1) by unnamed third persons, after interviews with Boyer, or (2) by Boyer himself. The correct answers to the two situations are based upon different considerations and must be separately considered.

(1) The production of documents made by unnamed third persons as a result of personal interviews with a person other than the writer of the document is objectionable upon several grounds. Such writing cannot be

evidence in any proper sense of the word. "Fishing examinations" are not allowable under the statute. *Githens, Rexsamer & Co. v. Derrickson & Martin,* 7 *Boyce* (30 *Del.*) 129, reported as *Fox v. Derrickson* in 104 *A.* 155. The granting of the production would be a "fishing examination" disclosing no evidence as such but merely the names of the witnesses by whom evidence might possibly later be adduced. This is not permitted. *Falco v. New York, etc., R. Co.,* 161 *App. Div.* 735, 146 *N. Y. S.* 1024; *Woods v. DeFiganiere,* 25 *How. Prac.* 522. The instrument itself would seem to be purely "hearsay," subject to all the infirmities of and objections to such evidence.

■ (2) The documents may be in the writing of Boyer, himself, who was the agent of the defendant. The defendant says that in such case the documents are privileged and need not be produced. This may or may not be the case, depending upon the circumstances. There seems to be no doubt that reports or statements submitted by an agent to his principal for the purpose of being laid before an attorney for guidance in pending or impending litigation are privileged. *Steele v. Stewart,* 1 *Phillips* 471, 41 *Eng. Rep.* 711; *Davenport Co. v. P. R. R.,* 166 *Pa.* 480, 31 *A.* 245; *Ex parte Schoepf,* 74 *Ohio St.* 1, 77 *N. E.* 276, 6 *L. R. A.* (*N. S.*) 325; *Atl. Coast Line R. Co. v. Williams,* 21 *Ga. App.* 453, 94 *S. E.* 584.

■ As a general rule, communications between an agent and his principal in the ordinary course of business are not privileged. 23 *A. & E. Ency.* (2d *Ed.*) 99, etc.

This Court does not now have before it sufficient facts to determine whether or not the petition herein filed should be granted.

It will be borne in mind that *Section* 4228 does not purport to vest in the law court all the jurisdiction of a Court of Equity with reference to Bills of Discovery but

only such part of such jurisdiction as relates to the production of books or writings containing evidence pertinent to the issue. Various similar statutes and their extent and purpose are set out in 2 *A. & E. Ency.* (*1st Ed.*) 208.

We think the proper practice in a case of this kind requires in a verified petition a definite statement of the particular document as to which inspection is desired. *Woolley on Delaware Practice*, § 337.

Upon the filing of the petition for production of documents, the party, in whose possession they are alleged to be, should, by order, be required to file a verified answer. This answer should indicate which documents are in the possession of the party and which are not, and set forth any grounds of objection to the production. If the objection be that the desired document is privileged, the answer should set forth the ground upon which any claim of privilege is based. There is something incongruous in a practice, as ours has been, which allows an order for production to be made on an *ex parte* application, with contempt as an attendant penalty, when there may be no possession of the documents or valid legal grounds for non-production.

A general requirement of the production of documents under the petition filed in the present case is denied.

The defendant in the above case, also, prayed for the production by the plaintiff of certain books and records, and in support of such prayer filed the affidavit set forth in the facts preceding this opinion.

It is a fundamental rule "that the plaintiff's right to a discovery does not extend to all the facts which may be material to the issue but is confined to facts which are material to his own title or cause of action; it does not enable him to pry into the defendant's case or find out the evidence on which his case will be supported. The plaintiff is entitled to a disclosure of the defendant's title and to know what his

defense is but not to a statement of the evidence upon which the defendant relies to establish it." *Pomeroy's Eq. Jur.* (*4th Ed.*), *Vol.* 1, § 201; *Mackenzie Oil Co. v. Omar Oil & Gas Co.*, 13 *Del. Ch.* 307, 119 *A.* 124. It would seem that the rule must be largely true if the parties be interchanged.

The books and records requested by the defendant, showing the clients and subscribers to the system operated by the plaintiff, would, if admissible in evidence at the instance of the plaintiff, be the evidence by which the plaintiff would prove his case. Generally speaking a defendant is not entitled to know the evidence by which the adversary's case will be proven. *Bidder v. Bridges, L. R.* 29 *Ch. Div.* 29.

The right of production of documents or of discovery does not extend to the discovery of the manner in which or the evidence by means of which the plaintiff's case may be established. *Wolcott v. Nat'l Elec. Signalling Co.* (*D. C.*), 235 *F.* 224, 228; *Sunset Tel. & Tel. Co. v. City of Eureka* (*C. C.*), 122 *F.* 960; *Hooton v. Dalby* (1907), 2 *K. B.* 18; *Benbow v. Low, L. R.* 16 *Ch. Div.* 93.

The defendant, in effect, asks for production of the names of the witnesses by whom the plaintiff will prove his case. This it is not entitled to have. *Knapp v. Harvey* (1911), 2 *K. B.* 725; *Kinney v. Rice* (*D. C.*), 238 *F.* 444.

It may be that under certain circumstances production of documents will be ordered where they contain evidence proper for the adversary to have even though they also contain evidence in favor of the party by whom they are held.

This is an action of tort. The plea is the general issue. Under this plea the whole declaration is in issue but the ultimate issue is the liability of the defendant to the plaintiff for the tort. The books required would disclose no evidence of the non-existence of liability but evidence

only of the extent of the business ·of the plaintiff and, therefore, would largely affect only the amount of damages. This is not such a situation as will overbalance the rule that the adversary need not disclose the evidence on which his case rests nor produce the names of his witnesses.

The denial of the petition for production in this case is not, we think, inconsistent with either *Thomas v. Pennsylvania R. R. Co.*, 2 *Penn.* 411, 47 *A.* 380, or *Githens, Rexsamer & Co. v. Derrickson & Martin*, 7 *Boyce* 129 (reported as *Fox v. Derrickson*, 104 *A.* 155).

The petition of the defendant for the production of the books and records is also refused.

Subsequently, a ·second petition for production of documents was filed by the plaintiff.

This second petition alleged that on July 23, 1932, the plaintiff called at the Wilmington office of the defendant and made complaint of the matters and things set out in the declaration; that on that day the Wilmington office of the defendant telegraphed to Boyer, the defendant's agent at Pottstown, Pa., making inquiry and asking for a report; that Boyer answered by telegraph and also ·by letter; that in the letter Boyer stated, in substance, that he made a serious ·mistake and asked the Wilmington Manager to use his efforts to prevent any report being made to the New York office, and it was averred that the letter contained matter pertinent to the issue as constituting admissions of the matters alleged in the declaration, and that the ·documents were in the possession of the defendant.

The affidavit of the defendant alleged that the docu-· ments were privileged and, after showing the sending of the telegrams and letter, stated:

"As appears from the foregoing, the said telegrams and letter were sent and received only after a complaint had been made of the matters and things alleged in the plaintiff's declaration.

"That the said documents were made as a part of the defendant's investigation of the claim made by the plaintiff, said investigation being made for the purpose of referring the claim to the Legal Department of the defendant corporation, and, in the event that suit was brought against the defendant by the plaintiff on the said claim, then the said investigation was to be used for the purpose of assisting counsel representing the defendant in the defense of such suit.

"The documents comprising part of the investigation were made and obtained by agents of the defendant for the instruction of the defendant as to whether or not it should resist the claim of the plaintiff. The said documents constitute reports or statements submitted by agents of the defendant for the purpose of being laid before an attorney for guidance in impending litigation.  *  *  *"

RODNEY, J., delivering the opinion of the Court:

The affidavit of the defendant confines objection to production of the documents to the one ground of privilege. We shall, therefore, confine our consideration to that one objection and not discuss any others that might exist. The privilege which is relied upon to prevent the production of the documents is that privilege which had its origin in the relationship of attorney and client, was founded on public policy and drew its strength from the fact that, as legal procedure became complicated and intricate, it was deemed essential that laymen or prospective litigants should be entitled to avail themselves of the services of those skilled in the law, without fear of publicity or that their confidences could, without their consent, be disclosed. The rule of privilege is universally recognized and only its application is ever subject to question. Documents are privileged which pass directly between a client and an attorney and this has been extended to include documents prepared by a third person at the request or suggestion of the attorney.

The precise question here involves documents transmitted from a non-professional third party (agent) to the defendant (principal).

In America there is a great lack of apt authority. In England there existed for a time two somewhat differing rules, the Law Courts under the Common Law Procedure

Act of 1852 not entirely following the stricter rules requiring Discovery adopted by the Court of Chancery. This variation may be shown by the cases of *Woolley v. N. L. Ry. Co., L. R.* 4 *C. P.* 602, and *Anderson v. Bank of British Columbia, L. R.* 2 *Ch. Div.* 644. The Supreme Court of Judicature Act of 1873 provided that where there was a variance between the rules of the Common Law and those of Equity that the Equity Rules should prevail and since then the older cases, including *Woolley v. N. L. Ry. Co., supra,* are not considered as of authority. 10 *Halsbury's Laws of England* (2d Ed.), *page* 387, 388.

The Rule now prevailing in England may be said to be that of *Southwark and Vauxhall Water Co. v. Quick,* 3 *Q. B. D.* 315, 9 *Eng. Rul. Cas.* 587. There the Rule is laid down as

"Documents prepared in relation to an intended action, whether at the request of a solicitor or not, and whether ultimately laid before the solicitor or not, are privileged if prepared with a *bona fide* intention of being laid before him for the purpose of taking his advice; and an inspection of such documents cannot be enforced."

This is the rule in Canada (*Thomson v. Maryland Casualty Co.,* 11 *Ontario L. Rep.* 44), and seems to be accepted in America (9 *R. C. L.* 177).

It remains then to see whether the affidavits bring the facts of the present case within the Rule.

From an inspection of the affidavits the following facts clearly appear:

That at the time the documents were written no suit had been brought or threatened, but merely a complaint made by the plaintiff; that the telegrams and letter were exchanged between two agents of the defendant in charge of two branch offices; that, at the time of such writing, the Home office of the defendant knew nothing of the matter complained of; that the writer of the letter requested that the Home office be not informed thereof.

The affidavit of the defendant, in which it is claimed that the documents are privileged, sets forth three separate reasons for the origin of the documents and these reasons may not be entirely consistent in the application of the foregoing Rule.

We are of the opinion that the documents are not privileged. We do not desire to go so far as *Thomson v. Maryland Casualty Co., supra,* in holding that the affidavit must expressly state "that the letters came into existence for the purpose of being communicated to the solicitor," but we do think that such a state of facts must be disclosed as would clearly indicate that the documents were prepared with a *bona fide* intention of being laid before the legal adviser. Such a state of facts, we think, has not been shown. In view of our conclusion it may be unnecessary to consider the standing that a Legal Department of a defendant corporation would have in connection with the privilege accorded to communications with an attorney. It may be somewhat doubtful if that privilege, which had its origin in the relation of attorney and client, applies to transactions between two branches of an elaborate corporate structure. If the privilege be accorded it may conflict with the rule that upon interrogatories a corporate officer answers not only from his own information but also from that of other officers of the company. 18 *C. J.* 1107; 10 *Halsbury's Laws of England (2d Ed.)* 427.

Let an order be prepared for the production of the letter mentioned in the petition.