MARIETTA MANUFACTURING COMPANY, a corporation of the State of West Virginia, *v.* THE HEDGES-WALSH-WEIDNER COMPANY, a corporation of the State of Delaware.

(*November* 16, 1938.)

HARRINGTON and RICHARDS, J. J., sitting.

*William S. Potter* (of Ward and Gray) for plaintiff.

514

*Robert H. Richards, Jr.* (of Richards, Layton and Finger) for defendant.

Superior Court for New Castle County, No. 237, September Term, 1936.

HARRINGTON, J., delivering the opinion of the Court:

It is not denied that this case is at issue on the pleadings, and pursuant to the provisions of *Section* 4703 of the *Revised Code of* 1935, the defendant seeks to compel the plaintiff to produce the following alleged books and records, which its petition states are in the possession of the plaintiff:—

2. The plaintiff's "progress schedules or any papers or other records, by whatever name they may be called, showing actual progress, and the planned progress of the construction of said dredges" which the plaintiff had contracted to build for the United States of America.

4. All photographs in the plaintiff's possession taken of the dredges during the course of their construction.

5. "All contracts with other sub-contractors upon said dredges, together with any amendments or extensions thereof. All correspondence between the plaintiff and other sub-contractors performing work in connection with the said dredges respecting the cause of delay in the completion of said dredges".

6. "All correspondence by the plaintiff company and the United States engineers in charge, respecting all causes of delay on the part of the defendant and of other persons performing work on or in connection with said dredges".

7. "All cancelled checks or other evidences of payment made by the plaintiff to the United States of America, for or on account of liquidated damages resulting from the delay in the delivery of said dredges to the United States Government, or any amount or amounts deducted by the United States of America, for the reason aforesaid, from the contract price, payable to the plaintiff, under its contract with the United States of America."

10. "All pay-roll records covering men working upon the dredges, Jadwin and Burgess, during the entire period of the construction of said dredges".

The plaintiff, in its answer, denies that it has any such works progress schedules or other papers, as are described in Paragraph 2 of the defendant's petition. It admits, however, that it has " a planned progress chart for each of the dredges, which will reveal the estimated number of man hours required on each part of the dredges", the production of which was, also, requested in that paragraph of the petition.

The plaintiff, also, denies in its answer that it has any such pay-roll records, as were described in Paragraph 10 of the defendant's petition; alleging "that said pay-roll records are not segregated as to the dredges in question, but cover other work in progress in the plaintiff's yards during

the time of the construction of the dredges, Burgess and Jadwin".

It further claims that such pay-roll records would, therefore, be unintelligible and irrelevant.

The plaintiff's answer does not deny that it has possession of the other books and writings asked for in the defendant's petition, but, on various grounds set forth in that answer, which will hereafter appear, claims that it should not be required to produce any of them.

In considering *Section* 4703 of the *Revised Code of 1935*, this Court, in *Wise v. Western Union Telegraph Co.,* 6 *W. W. Harr.* (36 *Del.*) 456, 178 *A.* 640, points out:

1. That whatever the scope of the right of discovery in a Court of Equity may be, the statute only provides for the production by a party to an action of "books or writings, in his possession, or control, which contain evidence pertinent to the issue"; and "under circumstances in which the production of the same might be compelled by a Court of Chancery".

2. That such books or writings must, therefore, be of such a nature that they would be pertinent and material evidence in the case, if offered at the trial; but that mere "fishing examinations" are not permitted in equity, and are not permitted by the statute. See, also, *Githens, Rexsamer & Co. v. Derrickson & Martin,* 7 *Boyce* (30 *Del.*) 129, 104 *A.* 155.

In the latter case, the court, in considering the same statute, said [*page* 132] : "The statute and procedure thereunder contemplate evidence, and the fact that the documents sought contain material evidence pertinent to the issue must sufficiently appear so that the court may understand the necessity for their production. The statute cannot be used, as it has been said for the purpose of a 'fishing examination'; for such a purpose is altogether outside of the scope

of the statute, so that the inquiry must be, does the application sufficiently show that the books and writings asked for contain evidence pertinent to the issue between the parties to the action?"

3. That in analogy to the right of discovery in equity, the statute was only intended to apply to books or writings pertinent to some part of the petitioner's case.

The court, also, said, however, (*Wise v. West. Un. Tel. Co.*, 6 *W. W. Harr.* [36 *Del.*] 456, 178 *A.* 643,) "It may be that under certain circumstances, production of documents will be ordered when they contain evidence proper for the adversary to have, even though they also contain evidence in favor of the party by whom they are held". But in *Githens, Rexsamer & Co. v. Derrickson & Martin*, 7 *Boyce* (30 *Del.*) 129, 104 *A.* 155, the court expressly said [*page* 132]: "If for any purpose the evidence sought may be introduced at the trial [by the petitioner] that is sufficient to require its production". See, also, *Loft v. Guth* (*Del. Ch.*), 191 *A.* at *page* 879.

In a petition of this nature, practice ordinarily requires a definite statement of the particular document of which inspection is desired. *Wise v. Western Union Telegraph Co.*, 6 *W. W. Harr.* (36 *Del.*) 456, 178 *A.* 640; *Eschbach v. Lightner*, 31 *Md.* 528.

In most cases, it should not only state that the books or writings, of which a discovery is sought, contain evidence relating to the merits of the petitioner's case, but should, also, state some fact or circumstance from which the court, independent of the party's oath, can judge of the materiality of the alleged evidence sought and the propriety of ordering a discovery of such evidence. *Condict v. Wood*, 25 *N. J. L.* 319; *Eschbach v. Lightner*, 31 *Md.* 528; *Jenkins v. Bennett*, 40 *S. C.* 393, 18 *S. E.* 929; 6 *Encyl. Pl.* and *Pr.* 804. See, also, *Githens, Rexsamer & Co. v. Derrickson & Martin*, 7 *Boyce* (30 *Del.*) 129, 104 *A.* 155, *supra*.

■ As the statute contemplates the production of evidence material to the issue "it is not enough that the documents [asked for] suggest or may furnish a clue to evidence". *Falco v. N. Y. & N. H. & H. R. Co.*, 161 *App. Div.* 735, 146 *N. Y. S.* 1024, 1025; *Wise v. Western Union Teleg. Co.*, 6 *W. W. Harr.* (36 *Del.*) 456, 178 *A.* 640.

In equity "a discovery, sought upon suspicion, surmise, or vague guesses, is called a 'fishing bill,' and will be dismissed". *General Film Co. v. Sampliner*, (6 *Cir.*) 232 *F.* 95.

As we have already stated, the same general principles apply in this proceeding.

■ In view of the argument made by the defendant's attorney, perhaps we should, also, state that because of the limited scope of our statute, the statement in *Re Barned's Banking Co., L. R.* [1866-1867] 2 *Ch. App.* 350 "that the obligation of a defendant to answer on a bill for discovery is a different thing from the question whether his answer is admissible when the cause comes to a hearing" (see, also, *Bray on Discovery* 112, 113; *Ragland on Discov.* 120), has no application to this case.

Bearing these principles in mind, we will now consider whether the petitioner is entitled to the discovery prayed for in the following paragraphs of its petition.

■ 2. The planned progress chart for each of the dredges to be built, which the plaintiff admits that it has, would, at the most, merely show the estimated number of man hours required on each part of the dredges, and, therefore, what it planned or expected to do, and not what work it actually did on each part of them.

The defendant contends that it would show the way in which the plaintiff intended to allocate the work on those dredges, but it seems to us that the ability to carry out the plan contained in such a schedule would necessarily depend on so many varying elements and circumstances that it

could be nothing more than a mere estimate and would, therefore, not be pertinent and admissible evidence. This would seem to be true, though, as stated in the petitioner's brief, the contract between the plaintiff and the defendant provided that "ample time" would be allowed the defendant to make efficiency tests of the boilers to be constructed and installed by it.

4. The plaintiff claims in its answer that, though it has photographs of the dredges taken from time to time during their construction, they are not material to any issue in the case. It, also, claims that, even if material, if offered at the trial, with the proper preliminary evidence of the dates on which they were taken, and other necessary supplementary evidence, they are not "books or writings", and are, therefore, not within the terms of the statute relied on.

That defense was not set up in the answer, and, perhaps, it would have been better practice to have included it as a specific defense, but we cannot disregard a contention of this nature, which strikes at the very foundation of the plaintiff's rights.

*Section* 4703 of the *Revised Code of* 1935 is a remedial statute (*Wills v. Kane*, 2 *Grant. Cas.* [*Pa.*] 47), and must, therefore, be construed liberally, but though so construed neither the words "books or writings" would seem to fairly include mere photographs of the dredges being built. See 6 *Ency. Pl.* and *Pr.* 786.

5. The plaintiff, in its answer, states that no contract of any other sub-contractor, relating to the construction of the dredges, or any amendments and extensions thereof, or any correspondence between the plaintiff and any other sub-contractor, is, in any way, relevant or material to the issue in this case. This is, in part, because of the statement that there was only one other sub-contractor, and the work called for under that contract was to be done after

the boilers to be built by the defendant had been installed in the government dredges.

Ordinarily, a contract between the plaintiff and a third person would not be material in an action between the plaintiff and the defendant; nor would correspondence between the plaintiff and a third person, with respect to the cause of the alleged delay in completing and delivering the dredges to the United States Government, usually be material, or anything but hearsay evidence. The only contention made by the defendant is that, if produced, the contract and correspondence might show that such sub-contractor was, in whole, or, in part, responsible for the delay in delivering the dredges in question; but no facts are alleged from which their materiality to the issue fairly appears.

So far as appears, the defendant, therefore, has no good reason to believe that the writings in question would, in any way, aid its case, and is merely hoping to find some such evidence. In other words, it is merely engaged in what has been aptly called "a fishing expedition".

6. Ordinarily, correspondence between the plaintiff and the United States Government engineers in charge of the work, with respect to causes of delay, on the part of the defendant, and of other persons performing work on the dredges in question, could only be hearsay evidence; and no facts are alleged in the petition that change that general rule, or show how such correspondence can be material to the defendant's case. That the defendant is again fishing for possible evidence, and not, in fact, asking for the discovery of what actually appears to be evidence, is, also, apparent.

7. The plaintiff denies that it has any cancelled checks, showing the payment of liquidated damages to the United States of America, for delay in completing and delivering the dredges, which it had agreed to build. It does

not specifically deny in its answer that it has "other evidences" of payments made in the way of deductions by the United States Government from the contract price of the dredges. Nor does it claim that such evidences of payments are not properly described in the petition. It does claim, however, that any such evidences of payments could only relate to proof of its own case, and not, in any sense, to the defense of the defendant thereto, and that it, therefore, should not be required to produce such evidence. Relevant books or writings, showing deductions by the United States of America, from the amount which the plaintiff was to be paid for building the dredges in question, for liquidated damages, because of failure to comply with its contract, would, undoubtedly, be a part of the evidence essential to prove the plaintiff's case, but such evidence is, also, pertinent to the defendant's defense, and as that is the only question raised, discovery should be granted.

10. The plaintiff objects to the production of the pay-roll records referred to in this paragraph of the defendant's petition because they are unintelligible, immaterial and irrelevant. It, also, specifically objects to the production of such records because they are not segregated as to the dredges in question, but, also, cover other work in progress in the plaintiff's yards during the time of the construction of those dredges. This allegation is not formally denied by the defendant, either by allegation, or proof, and, as the matter now stands, must be taken to be true.

For the reasons above given, discovery of the various alleged writings asked for in Paragraphs 2, 4, 5, 6 and 10 of the defendant's petition is denied, but discovery is granted, with respect to the writings asked for in Paragraph 7 of that petition.