118

Yvette C. BLANCHET, Plaintiff,

v.

COLONIAL TRUST COMPANY, a corporation of the State of Delaware; DiSabatino Holding Company, a corporation of the State of Delaware; Clarence DiSabatino and Raymond Abbott Sinskey, Defendants.

Civ. A. No. 1995.

United States District Court
D. Delaware.

Dec. 9, 1958.

Herbert L. Cobin, Wilmington, Del., for plaintiff.

E. N. Carpenter, II (of Richards, Layton & Finger), Wilmington, Del., for defendants.

RODNEY, District Judge.

The defendants have moved under Rule 34 F.R.Civ.P., 28 U.S.C.A., for the plaintiff to produce certain matters embraced in six categories. The plaintiff has agreed to produce most of the matters leaving categories 1 and 2 for consideration and these are the sole matters here considered. These are as follows:

(1) All recordings of conversations between plaintiff and defendants and/or representatives of defendants and/or employees of defendants.

(2) Plaintiff's personal Federal income tax returns for the taxable years 1954 and 1955.

The motions involve contentions based upon the following facts. The plaintiff, as an operator of a hair-dressing business, was a tenant of DiSabatino Holding Company in an office building in the City of Wilmington. The plaintiff's deceased husband had conducted the same business at the same location and the plaintiff had acquired the full control of the business from the estate of her husband at an expenditure of upwards of $4,000. It is alleged that in March or April 1955 Clarence DiSabatino, one of the defendants and President of Di-Sabatino Holding Company, another defendant and owner of the building, had a conversation with the plaintiff. In this conversation, it is alleged, that Mr. DiSabatino stated that Colonial Trust Company, another defendant, desired to open a branch bank in the DiSabatino Building and desired to know the amount that the plaintiff would accept to give up the occupancy of the premises occupied by her so that the Bank could occupy that location. The plaintiff stated the sum of $5,000 and subsequently moved out of the premises. For some reason no amount was paid to the plaintiff and the matter has dragged on. The plaintiff subsequently consulted an attorney who inquired as to the production of any testimony corroborating the statement of the plaintiff as to the various transactions. When it appeared there was none, it was agreed that a tape recorder would be obtained by the plaintiff and with this concealed on her person further conversations should be had with Mr. DiSabatino, and, perhaps, with others. This was done and one further conversation had with Mr. DiSabatino and two with a Mr. Winchester, Assistant to the President of Colonial Trust Company. The recordings of these conversations were afterwards transcribed. The plaintiff in her deposition purported to give the "substance" of these recordings and the foregoing is the basis of the motion of the defendant for the production of the transcription of the recordings.

Objection to the production of the recordings is largely based upon the contention that it is a prerequisite to productions under the Rule that "good cause" be shown and, it is contended, that such "good cause" is here lacking. It need not be labored that in this Third Circuit and in this District production under the Rule is not an absolute right

but that good cause must be shown.[1] As said in the De Gaetano case "what constitutes good cause has no general answer but depends on the facts of each case."

A clandestine tape recording has been somewhat likened to an eavesdropping or listening witness but there is this difference. With the name of this listening witness being known, his deposition might be taken and his information secured. With a clandestine tape recording withheld by a party and not produced on motions therefor, it is equivalent to having a listening witness immune from any process of discovery by an opposing party.

■ The plaintiff here, who had possession of the recording device, has been examined by deposition and stated what was termed the "substance" of the recorded conversation. It is conceivable that, at the trial, the recording may be used for the purposes of impeachment, corroboration, or as independent evidence. If properly authenticated, the recordings may, perhaps, be admissible for any of these purposes.[2] It is quite possible that the recorded conversation would include some remarks of the plaintiff herself and not a mere monologue by the defendant. For purposes of possible impeachment the recordings of the silent witness should be available equally to all parties.

If it be true that "good cause" has no general definition but must depend upon the facts of each case, then I think the facts of this case show good cause for the production.

■ In addition to the lack of "good cause" the plaintiff objects to the pro-duction because, it is contended, the recordings were taken by the client to be turned over to counsel for use at the trial[3] and thus became privileged and that they constituted a part of the "work product" of the lawyer under Hickman v. Taylor.[4] In my opinion, production may not be refused upon either ground. Courts have at times considered recordings from two viewpoints. One concerns the language actually recorded and the other the instrument itself as a sort of silent witness to the transaction apart from the language or voices recorded. Clearly no part of the transaction here involved was the work product of the lawyer as that term should properly be understood. There is no proprietorship in the language of the defendant whose voice was recorded and his own voice is not privileged against him. In Belfield v. Coop[5] a conversation was had between a testator and a person who was incompetent to testify. The conversation was preserved by wire recording. The Court held that a competent witness overhearing the conversation would not be disqualified and that the sound recording was such a witness even though a mechanical rather than a human witness. If the instrument be considered in the nature of a silent witness, then its testimony should be liable to discovery process in analogy to that process available against a living witness and production should be required.

It is obvious that I am not concerned with the propriety or impropriety of the use of hidden and undisclosed recording instruments. I am only concerned with this question:

1. Alltmont v. United States, 3 Cir., 177 F. 2d 971; Reeves v. Pennsylvania R. Co., D.C., 8 F.R.D. 616; De Gaetano v. Frank A. Clendaniel, Inc., D.C., 15 F.R.D. 114.

2. See cases collected in 58 A.L.R.2d 1024.

3. Wise v. Western Union Telegraph Co., 6 W.W.Harr. 456, 36 Del. 456, 178 A. 640.

4. 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.

5. 8 Ill.2d 293, 134 N.E.2d 249, 58 A.L.R. 2d 1008.

When such recordings have been made and the taker has testified on deposition as to the "substance" of the conversation may not the recording itself be ordered to be produced in discovery proceedings? I think it should be produced.

■ 2. Defendant has also moved for the production of the plaintiff's Federal income tax returns for the years 1954 and 1955. The defendant assigns as "good cause" for the production that the plaintiff contends that she relinquished her tenancy of the premises occupied by her as a result of the offer of a cash consideration for such relinquishment and her acceptance thereof, whereas the defendant contends such removal was caused by the failing state of her business which the returns would show. Income tax returns have been ordered to be produced in certain cases [6] and in this Court in Reeves v. Pennsylvania Railroad Co., D.C., 80 F.Supp. 107.

In this case, however, there seems to be no good cause for the production. The defendants have received, or it is agreed they will have full access to, all the records of the plaintiff as to the business during the time she conducted business at the location in question. With this being furnished there appears no good cause for the production of income tax returns and these returns will only be required when circumstances demand them.[7] Indeed until "good cause" appears there seems no reason to inquire even as to whether an income tax return has in fact been made.

Appropriate orders may be presented ordering the production of the recordings required or their transcriptions and denying the motion for the production of the income tax returns.

---

6. The Sultana, D.C., 77 F.Supp. 287; Connecticut Importing Co. v. Continental Distilling Co., D.C., 1 F.R.D. 190; Judson v. Buckley, 3 Fed.Rul.Ser. 34.42, p. 395; June v. George C. Peterson Co., 7 Cir., 155 F.2d 963.

7. Ellner v. Draper, D.C., 11 F.R.D. 333.