WILLIAM J. MARTIN and SOPHIE V. MARTIN,

*vs.*

THE D. B.. MARTIN COMPANY, JOSEPH J. MARTIN, HENRY LAMMERTZ and HARRY F.. COOK.

*New Castle, Oct. 28, 1913.*

A court of equity may disregard legal fictions, in order to prevent fraud or obviate its effect.

The fact that one person owns all the stock in a corporation does not merge his identity with that of the corporation.

The fiction of a legal corporate entity will be ignored, when used to shield fraudulent or illegal acts.

Notwithstanding the distinct legal entities of two corporations, persons who are directors and agents in each of two corporations cannot represent both in a transaction in which the interests of the two are opposed.

Defendant holding corporation, in which complainants are stockholders, owns the stock of seven of eight other corporations engaged in the same business, and finances them, and all of the directors of four of such companies are also directors of defendant corporation, while a majority of the directors of the others are directors of defendant, and the president of defendant is also president of seven of such other corporations. *Held*, in a proceeding to compel defendant to produce the books of the various companies, for discovering whether defendant is fraudulently mismanaging its corporate affairs, that the subsidiary corporations will be regarded by a court of equity as mere instrumentalities of defendant, and it will be compelled to produce the books of such companies, for discovery, as well as its own.

If the documents, the production of which is sought to be compelled by compulsory process, contain matters relevant to the issues, a denial that the documents will show the truth of the issues will not prevent an order for their production.

Hearing on motion for the production by the defendants of the several books and documents mentioned in the answers filed in this cause, and in the schedules thereto, in order that the complainants and their agents may take copies and abstracts

thereof and extracts therefrom. The facts appear in the opinion.

*Saulsbury* and *Morris*, with them *Richard B. Tippett*, of Baltimore, Md., for the complainants.

*Herbert H. Ward*, with him *Walter Biddle Saul*, of Philadelphia, Pa., for the defendants.

THE CHANCELLOR. The bill was filed by two stockholders of a corporation which owns practically no property except shares of stock of eight other corporations and uses its capital for the benefit of these certain corporations allied with it. All of the allied corporations are engaged in the same general business as the defendant company. The defendant company is admittedly a holding company. The president of the defendant company is president of all but one of the allied corporations. The defendant company owns all the shares of stock of seven of them, although some shares of each are in the names of persons to qualify them as directors. All the members of the boards of directors of four of the allied corporations are directors of the defendant company, and a majority of the members of the boards of directors of the other four are directors of the defendant company.

In brief, the bill alleges that the officers of the defendant company are grossly mismanaging its affairs in their own interests and fraudulently and wrongfully misappropriating its property, and that of the several allied or subsidiary corporations, for their individual profit, and in addition to general charges, specific instances are set out. The subsidiary corporations are not defendants. The president and two of the directors of the defendant company and of the allied corporations are co-defendants, and it is charged that the misconduct alleged was for their personal benefit. It is sought to have a receiver of the defendant company in order to effect reparation of the injury done, and there are also prayers for relief against specific acts of misconduct.

By the answer the allegations of misconduct and other equities of the bill are denied.

The matter now considered, after argument, is a motion for the production of books, papers and documents, not only of the defendant company, but also of the allied corporations, for the inspection of the complainants for the purposes of discovery. It is admitted that they have a right to inspect the books of the defendant company, under certain restrictions. The question is whether this extends to the books, etc., of the other corporations. It may also be assumed that the books, etc., sought are such as naturally contain evidence pertinent to the issues raised in the cause. The business of all the corporations is transacted in the same suite of offices.

The defendant company denies that it has the possession, or custody of, or control or power over, the books of the other corporations, but it is not denied that by stock ownership it has control of them through the power to elect their boards of directors and so to influence their business. But it is urged that this court should not make an order requiring the defendant corporation to produce books of corporations, over whose books, employes or business it has no direct or immediate control or custody.

There is no direct precedent for or against such an order, so far as I can learn. It is well settled that a court of equity may disregard formalities and break through the shell of fictions in order to prevent or undo fraud, where the formalities and fictions have been used to accomplish a fraud. This has been extended to cases where the legal fiction of a distinct corporate entity is used to accomplish a fraud. As for instance, in the case of *In re Horgan, et al.,* (*D. C.*) 97 *Fed.* 319, failing partners, to avoid creditors, turned over their business to a corporation, of which they were the stockholders and officers. There, a trustee in bankruptcy of the partnership was allowed to inspect books of the corporation to discover whether it had any assets belonging to the partnership. The court declared that under the circumstances before it the corporation was not a *bona fide* outside concern and that the books must be regarded as in substance and reality those of the bankrupts themselves and not of a genuine outside corporation.

But it is quite truly urged that this principle is not neces-

sarily applicable here, where the corporations in question were not created to accomplish fraud. The defense to the right to discovery is based upon the principle that the identity of company B is not destroyed or merged into company A, and the ordinary relations of stockholders toward its property and affairs are not altered by the ownership by A of all the stock of B, or because all the officers of B are also officers of A. It is, of course, true that the fact that one person owns all of the stock of a corporation does not make him and the corporation one and the same person. The cases cited by the defendant company were these: The franchise of a bridge company was not forfeited because all its shares were owned by a municipality, for the company had not lost or misused any of its functions by reason of such ownership. *Commonwealth v. Monongahelia Bridge Co.*, 216 *Pa. St.* 108, 64 *Atl.* 909, 8 *Ann. Cas.* 1073. The debt due from a construction company, which owned all the shares of a railroad company, operated and managed by it, could not be collected from property of the railroad company. *Exchange Bank v. Macon, etc., Co.*, 97 *Ga.* 1, 25 *S. E.* 326, 33 *L. R. A.* 800. Nor would process against corporation A be good against corporation B. *Peterson v. Chicago, etc., Co.*, 205 *U. S.* 364. Neither could company A be taxed for the business carried on by company B. *People v. American, etc., Co.*, 117 *N. Y.* 241, 22 *N. E.* 1057. Nor could a mechanic's lien be filed against property of company B on an agreement made with company A, when the law required an agreement with the owner of the property. *Sparks v. Dunbar*, 102 *Ga.* 129, 29 *S. E.* 295.

But these principles do not necessarily settle the point in dispute. It is a settled principle that the fiction of a legal corporate entity should be ignored when it has been used as a shield for fraudulent or other illegal acts.

"The courts have power to ignore the corporate existence, when such existence merely serves to conceal the truth. Nevertheless, it requires a strong case to induce a court of equity to consider two corporations as one, on account of one owning all the capital stock of the other." 2 *Cook on Corporations*, §317, *p.* 881 (6*th Ed.*). See also section 663, for instances of applications of the rule.

MARTIN, ET AL., vs. D. B. MARTIN CO., ET AL. 215

Opinion.

In dealing with corporations with interlocking directors, and other devices, legal and illegal, useful and harmless, or fraudulent and harmful, for the control of other corporations, the court may rightly ignore corporate existence, when such existence serves as a barrier to the righting of wrong done to the stockholders of the dominant corporation. Courts must scrupulously refrain from exceeding their powers, or stretching out too long an arm. Still, a court must not allow its eyes to be blinded with theoretical abstractions, or trammeled in conserving and enforcing rights by the logic of corporate entity considered as separate from those persons who constitute its membership. The following language is quoted by Judge Sanborn in the case of *U. S. v. Milwaukee, etc., Co.*, 142 *Fed.* 247, 254, though the source of it does not appear:

"'It is true that for certain purposes the law will recognize the corporation as an entity distinct from the individual stockholders; but that fiction is only resorted to for the purpose of working out the lawful objects of the corporation. It is never resorted to when it would work an injury to any one, or allow the corporation to perpetrate a fraud upon anybody.'"

In the case of *U. S. v. Milwaukee, etc., Co.*, *supra*, where one corporation was organized and owned by the officers and stockholders of another, whereby their interests were identical, they were treated as identical when the interests of justice required it. Judge Sanborn in that case said:

"If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons. This much may be expressed without approving the theory that the legal entity is a fiction, or a mere mental creation; or that the idea of invisibility or intangibility is a sophism. A corporation, * * * is no more fictitious or intangible than a man's right to his own home or his own liberty."

The equity of the bill is based upon the relationship of the defendant company to the other corporations and upon the obligations imposed thereby on the officers common to each of them'

"It is the settled rule of equity jurisprudence that the directors and agents of two companies are disqualified from representing both companies in a transaction where the interests of the two companies are opposed, nor will one corporation be permitted to form a company ancillary to the original one, and contract with it to the disadvantage of the creditors and stockholders of one of the companies. *Morawetz on Private Corporations*, §§529, 530. And a court of equity will, in such case, notwithstanding the apparent legal effect of such transfer and transaction between two such corporations, treat the same according to the real facts and equities of the case."

This was said in *Bridgens v. Dollar Savings Bank*, 66 *Fed.* 9, 12, and, of course, is fundamentally sound, being based on fiduciary relations of the officers of a corporation towards its stockholders.

It results, further, that the officers of corporation A, which holds all, or a controlling portion, of the shares of corporation B, have a fiduciary relation towards the latter which must necessarily be friendly. And further, if by reason of such ownership or control there can be an injury done to corporation B by the officers of corporation A, which would also be detrimental to the stockholders of corporation A, a court of equity would, notwithstanding the existence of the separate corporate entities, give relief according to the real equities of the case at the suit of a stockholder of corporation A.

At the bottom, who are the real, as distinct from the technical and legal, owners of the assets and business of the several allied or subsidiary companies? Of course, at law it is the entity known as the defendant company. Still its stockholders are the real owners of that company. Any loss to the dominant company is the loss of its stockholders; and to go one step further, any loss to the allied companies is ultimately the loss of the stockholders of the dominant company. Again, by whom is the loss caused? By those who dominate the affairs of all the corporations. Of what real consequence is it that there are intervening entities, which are fictions of the law, real though they be for proper purposes? It must be in the power of the court to look through these legal fictions to the equitable realities and see by whom and through what agencies

Martin, et al., vs. D. B. Martin Co., et al.   217

Opinion.

the wrong is done and on whom the loss ultimately falls.   I
believe that the authorities will support the following princi-
ples as applicable here:

Where one corporation owns all the shares of another cor-
poration, co-operating in the same business, the former financ-
ing the latter, and the same persons are officers of both corpora-
tions, the latter is for certain purposes to be considered as an
agency, adjunct or instrumentality of the former.   For the
protection of the rights of stockholders of the dominant, or
parent company, and for righting of wrongs done them by
means of the control of the dominant, or parent, company of
the allied companies, the latter are to be treated as agents of
the former, or even as identical with each other.

It would follow that the books, etc., of the agent are under
the control of the principal to such an extent as that the latter
can be compelled to produce them for the purpose of furnishing
discovery in a suit by a stockholder of the dominant company
alleging a fraudulent misappropriation of the property and
business of the allied, or subsidiary, companies by officers of
the dominant company for their individual benefit, to the
detriment of the interests of the stockholders of the dominant
company.

In the case I am considering, these circumstances appear:
A comity of interest and co-operation for mutual advantage
exists between the defendant company and the other corpora-
tions, in that the defendant company assists the other corpora-
tions financially, or, to use a modern term, finances them, and
keeps certain books of account showing the standing of the
financial relations between the defendant company and the
others from day to day.   It is fair to conclude that the defend-
ant company and the other companies are being conducted
together, the separate corporate entities being maintained for
some useful purpose, in place of a legal consolidation or mer-
ger of all into one corporation.   The controlling feature is the
existence of an indirect consolidation of several distinct corpo-
rations, co-operating and allied for a common purpose, one of
the corporations by ownership of stock, by identity of the man-
aging officers and by financial support, controlling the other

allied corporations. It is a fair conclusion, then, that the latter are the agents, or instrumentalities, of the former in carrying out an enterprise common to all.

In the case of *In re Rieger, Kapner & Altmark,* 157 *Fed.* 609, a partnership in the hosiery business acquired for partnership purposes ninety-nine per cent. of the capital stock of a corporation manufacturing hosiery. The shares were held by the partners proportionate to their interests in the partnership and the few remaining shares were held by relatives of one of the partners. The partners were the directors and officers, and managed the business of the corporation, the partnership taking and selling all of its output. When the partnership and the partners were adjudicated bankrupt, the receiver appointed in the cause for them, sought to take possession also of the property of the company as an asset of the partnership. It was held that the company was merely an agency of the partnership and its property assets of the bankrupt estate of the partnership, and that the respective rights of creditors of the partnership and corporation would be determined in the bankruptcy proceedings. The court, at pages 612 and 613, said:

"Are the partnership and the corporation separate and distinct legal entities, or is one subsidiary and auxiliary to the other?

*   *   *   *   *   *   *   *   *   *   .   *   *

"Instead of the partnership being the agent of the corporation, the corporation was the instrumentality acquired by the partnership to supply it with goods for the market. The corporate organization, it is true, was maintained, but it was for the purpose of facilitating and benefiting the partnership business. It was but a mere adjunct of the partnership.

*   *   *   *   *   *   *   *   *   *  ,   *   *

"The fiction of legal corporate entity cannot be so applied by the partners as to work a fraud on a part of their creditors, or hinder and delay them in the collection of their claims, and thus defeat the provisions of the bankruptcy act. The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a proper case ignore it to preserve the rights of innocent parties or to circumvent fraud."

The court evidently regarded the arrangement as a plan to obtain a double line of credit, one for the firm and the other for the corporation, and considered that the creditors of the

individual partnership had a direct interest in the corporate assets. The court referred to several cases where the fiction of legal corporate entity was ignored when used as a shield for fraudulent or other illegal acts, though it does not appear that the arrangement was originally intended to perpetrate a fraud.

In the case of *Hunter v. Baker, etc., Co.*, 190 *Fed.* 665 (Circuit Court of the United States for the Northern District of New York) company A organized company B to sell products of company A, and A owned and controlled a majority of stock of B, and managed and controlled and directed all the business and corporate affairs of company B, and the minutes of B were submitted to and approved by A before they became effective. A afterwards organized company C to take over the business and property of company B, which was then solvent, company C agreeing to pay the debts of company B. The plaintiff was a creditor of company B, and had sued company B when company C became bankrupt. It was held that companies B and C were merely adjuncts, or instrumentalities, of company A. The case really turned on the liability of company A, the defendant, on a bond which it gave in the bankruptcy proceedings to pay all the debts of company B; but the court intimated strongly that, independent of the bond, company A was probably liable to pay the debt due the plaintiff as a creditor of company B, because company B was an adjunct, or instrumentality, of company A. Speaking of general principles, Ray, J., said:

"The fact that the stockholders of two corporations, or the greater number thereof, are the same persons, does not operate to destroy the legal identity of either corporation. Nor does the fact that the one corporation exercises a controlling influence over the other, through ownership of its stock, or through the identity of its stockholders, operate to make either the agent of the other, or to merge the two corporations into one. There are at least two exceptions to the general rule of separate corporate existence and liability which are specifically applicable in this case, under the facts stated and admitted for the purposes of this demurrer, viz:

"(1) 'The legal fiction of distinct corporate existence in such cases will be disregarded, when necessary to circumvent fraud.'

"(2)   'It may also be disregarded in a case where a corporation is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality or adjunct of another corporation.'"

The exceptions to the general rule are taken from the opinion of Judge Noyes in the case of *In re Watertown Paper Co.*, 169 *Fed.* 252, 256.

The interests of justice require that in order that the injuries alleged to be done to stockholders of the defendant company by the treatment of the property and business of the subsidiary companies may be righted, the legal fiction of distinct corporate entities should be disregarded, inasmuch as the subsidiary corporations were so organized and controlled and their affairs are so conducted as to make them adjuncts or instrumentalities of the defendant company. It is but a step further to regard the books, etc., of these allied companies as the books of the defendant company, or at least to be under its control to such an extent as that they will be ordered to produce them for the purpose of discovery.

If books or documents, the production of which as evidence is sought by compulsory process, contain matters which are relevant to the issue of the cause, a denial that the documents, if produced, will show the truth of the allegations or charges sought to be proved thereby, will not be a bar to an order for production. *Langdell's Summary of Equity Pleading*, §212. This disposes of the averments in the answers to the bill and to the interrogatories propounded by the complainants, denying that the books, etc., which the complainants seek to examine, will show the truth of the charges in the bill which constitute its equity. It also sufficiently appears that the books, etc., the production of which is sought, and their contents are such as to be relevant to the cause, even though this be not distinctly admitted by the defendant. *Langdell's Summary of Equity Pleading*, §213.

I am of the opinion, then, that the complainants are entitled, speaking generally, to inspect the books of the several subsidiary companies, as well as of the defendant company, for the purpose of discovery to sustain the allegations and charges of the bill.

Both parties to the cause recognize that the right of inspection is limited to books containing matters relevant to the issue. So also that the defendant company, and its subsidiaries, will be protected from an inspection so conducted as to interfere unreasonably with the conduct of business, or to reveal matters not relevant.

Having determined generally the right to inspect the books, etc., of the several subsidiary companies, as well as of the defendant company, the terms and conditions under which the inspection may be had will be settled in the order, in case there be no arrangement made between the parties.

After the filing of the above opinion the form of an order was submitted by the solicitor for the complainant and solicitors for all parties were heard as to the same, there being some points of difference between them on matters of importance.

THE CHANCELLOR: In this case the complainant, in order to obtain the desired inspection, has proceeded according to the practice in Chancery cases. The answer in this court has a double feature, in that it furnishes discovery and sets up a defense. By averments in the bill and by interrogatories propounded to the defendants, the complainants have obtained admissions from the defendants as to the possession of certain books and writings by the defendant company and the existence of certain other books and writings of the several allied or co-operating companies. These consist of account books showing the business transactions of all the several companies. There is no distinct allegation that they contain evidence relevant to the issues in the cause. But it does distinctly appear, even without such direct admission, that they are of such a nature as that they will be assumed to be relevant, for they relate to the very transactions which the bill says were wrongful and injurious to the complainants.

The order for the production of these books and writings, then, is based on their nature and general contents, and the principle is thus stated in *Langdell's Summary of Equity Pleading*, §213:

"A defendant, therefore, who describes documents in his answer, or admits the possession of documents described in the bill, is always liable to have it claimed by the plaintiff that the description shows them to be relevant to the case of the latter though relevancy be not admitted, or even be denied."

This is usually applied to documents such as deeds, contracts and the like; but the reason for the rule is equally applicable to books of account showing the business transactions referred to in the bill.

Having shown in this way that the defendant has the books and writings containing evidence relevant to the "plaintiff's" case, the complainants moved for an order for the production of the books and writings, naming them.

Three points were discussed as to the form of the order:

(1) Can the complainants examine any entries in the books and writings as to transactions occurring subsequent to the filing of the bill? It is urged that the acts complained of were past transactions, done prior to the filing of the bill, and, therefore, the entries in the books subsequent thereto do not relate to the transactions complained of. But this is only a theoretical assumption. Without some showing that such subsequent entries do not in fact relate to the charges in the bill, it must be assumed that they may so relate. The defendant is amply protected if they do not so relate, for the complainants are not necessarily entitled to inspect all parts of all the books. The defendant is entitled by law to seal up, or conceal in any appropriate way, so much of any book or writing as he can swear has no relation to the case of the complainants. *Langdell's Summary of Equity Pleading*, §216.

I consider, then, that the right of inspection is not limited to entries in books and writings as to transactions prior to the filing of the bill, leaving to the defendant to protect themselves in the manner provided by law.

(2) It was urged with vigor that the inspection must be limited to such matters as relate to the case of the complainants, and that the order should give inspection of books and writings only "so far as it or they relate to the matters in issue in this case." It is a fundamental truth that relevancy

to the plaintiff's case is an essential element of discovery.   But, as is said above, the discussion starts with the assumption that the things to be inspected, viz., the books of account showing the business transactions of the company as to the things complained of in the bill, are relevant, and from their very nature may contain entries to prove the doing of the wrongs complained of.   If they do contain such entries they are admissible in evidence, and if they do not, then the defendant is protected.   I consider, then, that the complainants are entitled to inspect all such parts of all the books as are not sealed by the defendant.

(3)   The place of inspection.   It appears that all the books and writings are out of this State.   The established practice is to require the documents to be deposited with an officer of the court, and in England it was with the defendant's clerk in court.   As there is no such officer here, they should be deposited with the Register in Chancery.   But in order not to unreasonably inconvenience the defendant in the use of the books and writings during the inspection, the order will be made, by consent of counsel, for liberty to make the inspection at the offices of the defendant company in the City of Philadelphia.   Mention is made of the agreement on this particular point so that this order will not be deemed a precedent without an agreement.

The order entered was in the following form:

AND NOW, TO WIT, this thirteenth day of November, A. D. 1913, the motion of the complainants that the said defendants and each of them be ordered to produce to the complainants, their solicitors and agents, or to an accountant or accountants to be agreed upon by the solicitors for the respective parties, or to be appointed by the Chancellor, the several books, papers and documents mentioned in the answers of the said defendants filed in this cause and in the schedules thereto, and that said complainants and agents, or accountant or accountants be permitted to take copies and abstracts thereof and extracts therefrom as they shall be advised, at their expense, and that the said defendants and each of them be ordered to produce the said books, papers and documents, or any of them, upon any examination of witnesses in this cause and at the hearing thereof, as the complainants shall require, having come on to be heard, and the same having been debated by the solicitors for the respective parties and maturely considered by the Chancellor,

Decree.

IT IS ORDERED BY THE CHANCELLOR that the said The D. B. Martin Company, one of the said defendants, do produce to the complainants, and their solicitors, and to an accountant or accountants to be agreed upon by the solicitors for the respective parties, or to be hereafter selected by the Chancellor, the following books, papers and documents:

[Here followed a description of the books, papers and documents.]

AND IT IS FURTHER ORDERED, that the complainants, their solicitors and said accountant or accountants are, at their expense, to be at liberty to inspect and peruse the documents so produced, and to take copies and abstracts thereof and extracts therefrom, as the said complainants shall be advised; that said inspection and taking of abstracts and copies shall be so conducted as not to unduly embarrass the said defendant company, and the allied companies hereinbefore mentioned, in the use of said books and papers in the course of the business of said company or companies; that the said complainants, their solicitors and said accountant or accountants do not divulge the contents of said books, papers and documents to any person other than to each other, and to this Court, its officers and agents for use in this cause; and that prior to or during the said inspection the said defendant company is at liberty to seal up such parts of the said books, papers and documents as according to an affidavit or affidavits to be filed by it from time to time do not relate to the matters in question in this cause.

AND IT IS FURTHER ORDERED, that said inspection of the said books, papers and documents shall be made between the hours of eight o'clock in the forenoon and five o'clock in the afternoon of such number of days as may be necessary for making said inspection; and that such inspection and such copies shall be made in the suite of offices on the second floor of the building at Thirtieth and Market Streets in the City of Philadelphia and State of Pennsylvania, occupied by the said companies, or some of them, or if said books, papers and documents be not at said place, then said inspection and examination be made wherever said books, papers and documents are in use in the regular course of business.

AND IT IS FURTHER ORDERED, that the said defendant corporation do produce the said books, papers and documents upon any examination of witnesses in this cause, and at the hearing thereof, as the complainants shall require.

AND FURTHER, the Chancellor reserves the right to make such other, or further, orders respecting the execution of this order, upon application of either of the parties, as to him shall seem necessary or proper.

CHAS. M. CURTIS,
Chancellor.