LOFT, INCORPORATED,

*vs.*

CHARLES G. GUTH, THE GRACE COMPANY, INC. OF DELA-
WARE, a corporation of the State of Delaware, and
PEPSI-COLA COMPANY, a corporation of the State of
Delaware.

*New Castle, Feb. 24, 1937.*

362

*Clarence A. Southerland,* of the firm of Ward & Gray, of Wilmington, and *David L. Podell,* of the firm of Hays,

Podell & Shulman, and *Levien, Singer & Neuberger,* all of New York City, for complainant.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, of Wilmington, for defendants.

THE CHANCELLOR: In his book on the Law of Discovery, Sir James Wigram laid down two main propositions. The second of these is in part as follows:

" * * * the right of a plaintiff in equity to the benefit of the defendant's oath, is limited to a discovery of such material facts as relate to the plaintiff's case—and does not extend to a discovery of the manner in which, or of the evidence by means of which, the defendant's case is to be established, or to any discovery of the defendant's evidence." *Wigram on Law of Discovery, star page* 90.

This principle is as applicable today in courts of equity as it was when formulated by Sir James Wigram, except as it may have been curtailed by statute. It is accepted as inherent in *Rule* 34 of this Court under which the pending interrogatories are propounded. *Mackenzie Oil Co. v. Omar Oil & Gas Co.,* 13 *Del. Ch.* 307, 119 *A.* 124; *Terry v. Stull, et al.,* 20 *Del. Ch.* 39, 169 *A.* 729. It is equally applicable in the law courts of this State when discovery of books, etc., is sought under the statute (*Rev. Code* 1935, § 4703) which empowers the court to order the inspection of documents in possession of an adversary "under circumstances in which the production of the same might be compelled by a Court of Chancery." *Wise v. Western Union Telegraph Co.,* 6 *W. W. Harr.* 456, 178 *A.* 640, 641.

The principle is easy of statement, but not always so easy of application. The Lord Chief Baron of the Exchequer in *Combe v. City of London,* 4 *Younge & C. Ch.* 139, in referring to the principle as applied in the cases said in substance, that he had not imagined there was such difference of opinion in them as appeared to be; and Judge Learned Hand of the Second Circuit, in *Texas Co. v. Cohen,* (*C. C. A.*) 15 *F.* (2d) 358, mentioned the subject of discovery generally as one "which, even while it was best

understood, was never clear, and which entrapped the best judges and the most seasoned practitioners."

Wigram's proposition is formulated in terms of the plaintiff's right. But the right to discovery under *Rule* 34 of this Court, as under similar rules in most if not all courts, is available to defendants, without the necessity of a cross-bill, as well as to complainants. *Terry v. Stull, et al., supra.* While in some cases the right to discovery seems to have been more liberally allowed to defendants than to complainants (see *4th Ed.* of 1 *Pomeroy, Equity Jurisprudence,* § 201, *Page* 295 *Note*), yet no court has, so far as I am advised, gone so far as to declare as a principle that greater freedom of inquiry should be allowed to a defendant than is allowed to a complainant. The Chancery Division in *Bidder v. Bridges,* 29 *Ch. Div.* 29, clearly indicated at pages 35, 41, 42, that no greater latitude was to be accorded to the one than to the other. Since the right to discovery is founded in the justice of compelling one party to furnish to the other information in his possession which the other needs in sustaining his own case, it is difficult to see wherein the position of the parties as complainants or defendants in the cause can have any differentiating effect upon the extent of liberality with which each is respectively entitled to exercise the right.

Wigram's proposition is stated in the affirmative and in the negative. Affirmatively, the party is entitled to discovery of such material facts as relate to his own case; negatively, he is not entitled to a discovery of his adversary's case. Very often it happens that the case of each of the parties rests upon evidence which is common to both. In that situation, discovery is of facts lying in the common field available to either party. In point in this connection is Wigram's language at *star page* 91 of his book, which is as follows:

"It seems clear, that this right of a plaintiff to discovery in support of *his own case* is not abridged, as to any particular discovery, by the consideration that the matter of such particular discovery may

be evidence of the defendant's case in common with that of the plaintiff." (Italics Wigram's.)

The same thought which is thus expressed by Wigram may be stated as follows—the only discovery which the interrogated party may refuse to make is that which relates exclusively to his own case. *Whately v. Crowther,* 51 *Al. & Bl.* 709, 119 *Eng. Reprint* 645; *Bidder v. Bridges, supra; In re Baker, (D. C.)* 13 *F.* (2*d*) 413.

It accordingly follows that the interrogating party is entitled to the discovery of evidence "material to his own case even though the interrogated party's evidence may thereby be incidentally disclosed." 1 *Pomeroy, Equity Jurisprudence,* (4*th Ed.*) §§ 201, 207. See, also, *Daniel's Chancery Practice, star pages* 580, 1831; 9 *R. C. L., p.* 174, § 13.

The complainant here, the interrogated party, makes the contention that the only kind of case which the defendant can set up as the basis of interrogatories to the complainant, is one where the defense embodies a confession and avoidance. This is upon the statement that it can be in that sort of case only that we find matter of defense, *viz.,* the avoidance, which is exclusively the defendant's case. But if the statement be conceded, the result does not follow. Exclusiveness is the interrogated party's protection; it is not always a pre-requisite of the interrogating party's right. Relevancy that is exclusively in support of the interrogated party's case is his protection against discovery; a similar exclusive relevancy to the interrogating party's case is not a pre-requisite to his right to exact discovery. *Bidder v. Bridges, supra,* which the complainant cites in support of his contention does not state that the defendant can interrogate only as to matter alleged by way of avoidance. It accepts relevancy also as a test. See 29 *Ch. Div. p.* 45.

*Rule* 34 of this court recognizes relevancy to the interrogating party's case as the test of his right to discovery.

The language is—"facts and documents in the possession of the other party containing evidence material to the support or defense of the cause." The language is general. It does not limit the relevancy to such as is *exclusive* to the support or defense of the cause. The rule leaves undisturbed the principles prevailing before its adoption which govern the subject matter concerning which, and the extent to which, discovery might be elicited. *Terry v. Stull, et al., supra.*

Under those principles, facts and documents which are common both to the support of the complainant's case and to the defense of the defendant, may be the subject of inquiry addressed by either party to the other.

Where the defense is a mere negation of the complainant's case, it is true that every fact which the complainant alleges as material to his case becomes relevant also to the defendant's denial. In this sense, the case of the complainant and the defendant may be said to stand upon a common ground of relevant facts. But where that is the bald state of the matter, the defendant, notwithstanding it is material to his defense to inquire into the facts upon which the complainant relies, will not be permitted to do so. *Sunset Tel. & Tel. Co. v. City of Eureka,* (C. C. A.) 122 F. 960; *Texas Co. v. Cohen,* (C. C. A.) 15 F. (2d) 358. The discovery which is sought must be of facts whose relevancy arises out of something more than a bare denial of the opposite party's allegations. Such in effect was the ruling of the Superior Court of this State in *Wise v. Western Union Telegraph Co., supra.* Lord Chancellor Brougham in *Bolton v. Liverpool,* 1 *Myl. & K.* 88, 39 *Eng. Reprint* 614, held that if the information sought to be disclosed by documents supports the interrogating party's case *only* in the sense that it shows the other party's title to be bad, production would not be ordered notwithstanding there was relevancy of the documents to the general controversy.

But in *Storey v. Lennox,* 1 *Myl. & Cr.* 525, 40 *Eng. Reprint* 476, it was clearly determined that inspection of

documents would not be denied to a party on the ground that they contained evidence in support of the case of his adversary, where they also contained evidence relevant to the case of the party applying for the inspection. Professor Langdell in his *Summary of Equity Pleading*, (1883) § 212, states that "case" when used in such connection as the present "is not used in the sense of action or suit, nor even in the sense of an affirmative case or defence, as regards the burden of proof; it means simply the cases of the plaintiff or defendant in point of evidence."

Professor Langdell at another place in his book, *supra*, § 214, observes that "it is not always easy to distinguish accurately between what is evidence for the defendant, and what is evidence for the plaintiff. So long as each party confines himself to evidence in support of an affirmative case or defence, there is little difficulty. But either party may desire to give evidence in disproof of the case or defense set up by his adversary, as well as in proof of an affirmative case or defense set up by himself; and he is as much entitled to discovery in the one case as in the other." When the case or defense is clearly not of an affirmative character, it is often a question of nice distinctions and therefore of great difficulty to determine whether the discovery is sought for the legitimate purpose of obtaining evidence to sustain the party's own case or defense, or for the illegitimate purpose of simply prying into the evidence of his adversary.

In the instant case the questions presented by the exceptions to the interrogatories that are insisted upon do not appear to me to be particularly difficult to answer. The bill and answer should be kept in mind.

The bill charges Guth with fraudulent behavior while he was president and the controlling influence in the complainant, Loft, Incorporated, in that he caused the complainant to reject an attractive business opportunity which was offered to it, embraced the opportunity himself and used the materials, money, credit, personnel and facilities of the complainant to make of the venture a highly profit-

able success. That is the complainant's case. In support of it the complainant alleges numerous facts, which themselves need the proof of details of other facts to establish them. These facts, for the establishment of which other facts must be shown, are that Guth never submitted the proposition to the complainant's directors; that the proposition was one looking to the wholesaling of not only a syrup for a certain soft drink but as well of the finished carbonated beverage made therefrom; that the complainant was already in a wholesaling line of related character; that it had the necessary plant facilities, personnel and financial resources to enable it to engage in the new business and extensive retail outlets to sustain its successful promotion.

The defendants deny the alleged fraudulent misuse of power by Guth, the complainant's former president. Thus the main thesis of the complainant's case is controverted. Now, as the complainant had alleged certain facts which, it claimed when proved would establish the fraud, the defendants averred in their answers the converse of those facts which, they assert, when proved will give a perfectly innocent color to all of Guth's acts and thereby rebut the fraud with which he is charged.

Thus the complainant alleges facts in support of its case, and the defendants aver the exact opposite in support of their defense. It is entirely conceivable that the complainant might not produce evidence in support of every fact alleged by it, and yet show enough to call on the defendants to proceed with their defense.

The complainant does not show in its bill what details of evidence it proposes to produce to establish the general facts which it alleges as indicative of Guth's fraud. Neither do the defendants by their answer show what evidence they propose to produce to establish the facts by which they contend Guth's acts will be demonstrated to have been entirely free of all the imputations of fraud with which the complainant asperses them.

The defendants desire to go to the books and records of

the complainant itself for the details of evidence that will sustain their averments. Their interrogatories are directed to that purpose. The complainant responds to the defendants' request by saying—why, I propose myself to use those books and records for evidential purposes, and, if so, you should not be allowed to see them. Must the defendants rely on the complainant to produce all the books and records on its side of the case sufficiently to develop therefrom not only all that the complainant desires but as well all that the defendants need?

It does not seem right that they should. The case of the complainant and the defense of the defendants so far as proof is concerned, are spread over a field of evidence which both occupy in common. *Combe v. City of London,* 4 *Y. & C. Ex.* 139, 160 *Eng. Reprint* 953. For illustration take the mater of whether the complainant was fitted to conduct and was in fact engaged in conducting a wholesale business in the soft drink line. The complainant says it was; the defendants say it was not. Now whether it was or not is a relevant fact. The complainant might prove that it was by evidence *aliunde* its books. Surely the defendants should be permitted to show by the complainant's own books and records that it never had engaged in such a business.

Similarly with respect to the question of whether the complainant's financial condition was such as to justify it in embarking upon the proposed new venture. The defendants are entitled to show by the complainant's books to what extent it was financially incapacitated to undertake a large investment in a new enterprise. The complainant, by the way, does not object to interrogatories of this character. Its concession under this head hardly seems consistent with its objection under the head dealing with the records showing the extent of the complainant's wholesale operations. The trial balances for the years 1930, 1931 and 1932 appear to be relevant to the defendant's defense. If by "analyses of various accounts," the defendants mean to describe the

complainant's own reports on the true value of accounts due it and listed in lump among its assets, I think the inspection should be afforded. Such analyses may show the assets of the complainant to be worth less than the balance sheets would indicate.

One of the allegations of the bill is that the business which the complainant did for Pepsi-Cola Company was conducted at no, or very little profit, to the complainant. This alleged fact is put forward as one of the indicia of Guth's alleged frauds. The defendants deny it, insisting that the complainant profited substantially by its dealings with Pepsi-Cola Company. What evidence the complainant will produce in sustaining its allegation in this particular, the bill does not indicate. Certain it is that the complainant's own books will supply evidence of a strong nature bearing upon the point. The defendants, who insist that a substantial profit was realized by the complainant in its dealings with Pepsi-Cola Company, should not be required to depend on the complainant to develop from the books what they might show in favor of the defendants. The defendants are entitled to present their own interpretation of what the books show. That, they cannot be expected to do, unless they are afforded a seasonable opportunity before trial to examine the books. Exceptions under this head will be overruled.

It is sought to secure inspection of the minutes of the directors' meetings. An inspection is not opposed if it be confined to those minutes that deal with the discontinuance of the sale of Coca-Cola and the substitution therefor of Pepsi-Cola by the complainant. All the minutes which relate to the complainant's consideration of the proposition that it embark upon the Pepsi-Cola venture should be produced. The defendants also wish to obtain production of the minutes which show that the complainant's directors had knowledge and, having knowledge, approved of the dealings between the complainant on the one side and Pepsi-Cola Company and The Grace Company, Guth's alleged tools, on

the other. This, of course, is for the purpose both of establishing openness of relations and of refuting any suggestion of secrecy on Guth's part. Inspection of the minutes ought to go also to that extent. Beyond the limits herein indicated, inspection of the minutes should not be afforded.

Interrogatories are framed for the purpose of securing an inspection of the books which show the extent of the sales of Coca-Cola by the complainant down to the date when the complainant discontinued the sale in its stores of that beverage and substituted therefore Pepsi-Cola. Inasmuch as the bill charges that Guth ordered the change solely in the interest of popularizing Pepsi-Cola and not in the interest of the complainant's profits, a charge which the defendants deny, the interrogatory seems to be addressed to a relevant subject matter. The evidence it adduces will supply an aid in judging along with other evidence, whether the complainant profited more by its sales of Pepsi-Cola than by its former sales of the rival beverage. This, if so, will tend to refute the charge that the change from Coca-Cola to Pepsi-Cola was solely to exploit the latter in the interest of Guth.

All books, entries, cash books, cancelled checks, debit tickets, journal entries, summaries and work sheets dealing with Guth's financial transactions with the complainant are demanded. This is for the purpose, I suppose, of showing that the thirty thousand dollars which the bill alleges Guth converted to his own use in connection with the Chocolate Products Company liquidation, was paid by him. All entries bearing on that subject should be produced. Guth insists that the complainant has been paid the thirty thousand dollars, averring that a statement of his account submitted to him by the treasurer of the complainant contained no such item as outstanding. The matter is one apparently involving mutual accounts. Guth is entitled to an inspection of the books, etc., which contain the items that compose the account, especially in view of the fact that the

last statement received by him purporting to reflect a summary of the account, supported his defense of payment.

As Guth admits the receipt of the thirty thousand dollars, there can be no point in producing for his inspection the books of Chocolate Products Company. The exception to the interrogatory to that end will be sustained.

The defendants refer to Pepsi-Cola Company's interrogatories Nos. 40, 41, 42 and 43 as covering books and records which would "show the machinery and equipment of the Loft Company which could be used in the preparation of carbonated drinks in bottles." As the books and records are described, they do not appear to me to be of that character. Those interrogatories, however, are proper for the purposes and to the extent herein otherwise indicated.

Interrogatories 1, 2, 3 and 4 addressed by The Grace Company to the complainant appear to request books, etc., of the latter to show data and entries which are the counterparts of The Grace Company's own records. Unless The Grace Company shows its own records to be lost (it does not so aver), it would seem that there is no occasion to allow it to examine the complainant's records as requested in those interrogatories. It seems to be a proposition on The Grace Company's part that it should be allowed to pry into the complainant's evidence for the purpose of discovering whether the complainant can contradict The Grace Company's own books. Interrogatories 7-12 propounded by The Grace Company bear on the costs to the complainant in its sales to The Grace Company. Those items of inquiry are proper. Interrogatories 23 and 25 (The Grace Company) do not appear to me to be proper. Those numbered 26 and 27 appear to be proper.

Pepsi-Cola Company's interrogatories 19, 20, 21, 22 and 25 are not allowable. Its number 31 is allowed. So are its 29 and 30.

Inasmuch as the bill does not charge that Pepsi-Cola

Company and The Grace Company are indebted to the complainant, I can see no pertinency in allowing interrogatories intended to show that there is no such indebtedness. As to Guth's alleged indebtedness, I have already indicated my views.

As to those interrogatories which I have not specifically mentioned, the views herein elsewhere expressed will serve as a guide to the solicitors when they confer upon the draft of an order.

The complainant's solicitors at several points in their brief make the contention that the production prayed for ought not to be granted because the interrogating party has other means of proof and so does not need the aid of the requested books, etc. It is not necessary to show as a prerequisite to discovery that the interrogating party has no other witness or evidence to establish the facts of which discovery is sought; he is entitled to it if it be merely cumulative. *Story, Equity Pleading* (10th Ed.) § 324a; 1 *Pomeroy, Equity Jurisprudence,* (4th Ed.) § 191, *p.* 264; 18 *C. J.* 1058.

The solicitors for the parties are invited to confer on an order in accordance with the foregoing.