GEORGE M. COLVOCORESSES,

*vs.*

W. S. WASSERMAN CO., a corporation of the State of Delaware.

*New Castle, May 22, 1940.*

*Dudley C. Lunt,* for complainant.

*Aaron Finger,* of the firm of Richards, Layton & Finger, for defendant.

THE CHANCELLOR: The complainant, by his petition, seeks to compel the defendant company, through its officers, to answer, under oath, certain interrogatories attached thereto, and to produce certain documentary evidence referred to in such petition and in a schedule likewise attached thereto. The complainant not only alleges that the facts, which he seeks to have disclosed, and the documents, which he seeks to have produced, are within the knowledge of the defendant and its officers, but that they are material and relevant to the proof of his case. See *Langdell's Equity Pleading,* 244.

The defendant company has not denied the allegations of the complainant's petition, but has merely filed exceptions thereto; and the case is before this court on the issues raised thereby.

In support of its exceptions, the defendant primarily claims that there is a clear distinction between the discovery of ultimate facts and the evidence necessary to prove such

facts; that the information sought by the complainant is within the latter class, and disclosure and production, therefore, cannot be ordered in this proceeding. Secondarily, and perhaps with somewhat less emphasis, the defendant, also, claims that the complainant is merely engaged in what is usually termed a "fishing expedition," and is attempting to secure evidence, which is, in no sense, material to the proof of his case under the pleadings.

The right of a complainant, in a bill in equity, to require the disclosure of facts and documents within the knowledge, possession and control of the defendant, and directly or indirectly material to the complainant's case, is ordinarily an incident to the relief sought thereby. *Martin v. D. B. Martin Co.*, 10 *Del. Ch.* 211, 88 *A.* 612, 102 *A.* 373; *Loft, Inc., v. Guth, et al.*, 21 *Del. Ch.* 361, 191 *A.* 879; *Bray on Discovery*, 11, 16, 17; *Langdell's Eq. Pl.*, 231, 233, 242. In this connection, Professor Langdell points out that

"A plaintiff, in equity, is entitled to the benefit of all evidence in the defendant's possession, which will aid him in proving the allegations and charges in the bill, whether such evidence consists of his personal knowledge, or be contained in documents and writings." *Langdell's Eq. Pl.*, 242, *supra.*

There may be some exceptions to this general rule, which need not be considered, but it usually applies whether the complainant cannot otherwise prove the facts which he seeks to have discovered, whether he wishes to use them in aid of other proof, or whether he seeks discovery in order to avoid expense or delay in otherwise procuring proof to establish his case. *Bray on Discovery*, 1. In other words, discovery, when permissible, is not limited to what the party seeking it does not already know, but includes the procuring of admissions of anything which the complainant has to prove in an issue between himself and his opponent. *Bray on Discovery*, 2. The complainant's rights, in this respect, are confined, however, to such material facts in the possession of the defendant, and whether documentary or otherwise, as in some way relate to the complain-

ant's own case. *Langdell's Eq. Pl.*, 243; *Loft, Inc., v. Guth, et al.*, 21 *Del. Ch.* 361, 191 *A.* 879; *Martin v. D. B. Martin Co.*, 10 *Del. Ch.* 211, 88 *A.* 612, 102 *A.* 373. In fact, as was tersely said in *Loft, Incorporated, v. Guth, et al., supra,* [21 *Del. Ch.* 370, 191 *A.* 883],

"* * * the right to discovery is founded in the justice of compelling one party to furnish to the other information in his possession which the other needs in sustaining his own case * * *."

But the complainant's right to discovery is not affected, though such material facts or documents may likewise be material to the defendant's case. *Loft, Inc., v. Guth, et al.*, 21 *Del. Ch.* 361, 191 *A.* 879. The same seems to be true of documents or other evidence which will merely tend to impeach the defendant's case. *Bray on Discovery,* 459; *Comb vs. Corp. London,* 1 *Y. & C. C. C.* 650, 62 *Eng. Rep.* 1056. These principles are recognized by and incorporated in *Rule* 34 of this court. See *Loft, Inc., v. Guth, et al., supra.* That rule provides that the Chancellor

"* * * may make all such orders as may be appropriate to enforce answers to interrogatories, or to effect the inspection or production of documents in the possession of either party, and containing evidence material to the cause of action or defense of his adversary."

In pleading, there are logical and practical reasons for drawing distinctions between the necessity for alleging ultimate facts, and the evidence to prove such facts. *Universal Oil Products Co. v. Skelly Oil Co.,* (D. C.) 12 *F.* 2d 271; *Brumbaugh's Legal Reasoning & Briefing,* 386. There are federal cases, which, apparently, recognize the same distinction in requiring discovery in equity. (*Wolcott v. National Electric Signal Co.,* (D. C.) 235 *F.* 224; *P. M. Co. v. Ajax Rail Anchor Co.,* (D. C.) 216 *F.* 634; *Luten v. Camp,* (D. C.) 221 *F.* 424, 427; *Byron Weston Co. v. L. L. Brown Paper Co.,* (D. C.) 13 *F.* 2d 412; *Blast Furnace Appliance Co. v. Worth Bros. Co.,* (D. C.) 221 *F.* 430) ; but whatever the reason for, or origin of that limited practice may be, it is apparent that no such distinction was recognized in the early English Chancery practice.

Neither *Marriott v. Chamberlain* [1886], *L. R.* 17 *Q. B. D.* 154, nor *Hooten v. Dalby* [1907], 2 *K. B.* 18, cited in *P. M. Co. v. Ajax Rail Anchor Company, supra,* is inconsistent with this conclusion. *Terry, Administrator, v. Stull,* 20 *Del. Ch.* 39, 169 *A.* 739, may give some support to the defendant's contention that this court has adopted the practice referred to in the federal cases, cited by that company, but that practice was neither referred to nor followed in *Loft, Inc., v. Guth, et al., supra.* In the latter case, the Chancellor made the following significant statements:

1. *"Rule* 34 of this court recognizes relevancy to the interrogating party's case as the test of his right to discovery."

2. "Affirmatively, the party is entitled to discovery of such material facts as relate to his own case."

In most cases, when the facts and documents in question are in the possession, knowledge and control of the defendant, relevancy and materiality to the complainant's case, therefore, seem to govern his right to discovery.

Courts of equity will order discovery to assist a complainant in proving a known case, but not to assist him in a mere roving speculation, the object of which is to see whether he can fish out a case from the defendant. *Bray on Discovery,* 13, 16, 98. That right is, therefore, limited "to supporting a definite case set up" by the party seeking it; and a discovery in equity "sought upon suspicion, surmize or vague guesses is called a fishing bill," and will not be permitted. See *Marietta Mfg. Co. v. Hedges-Walsh-Weidner Co.,* 9 *W. W. Harr.* (39 *Del.*) 511, 2 *A.* 2d 922; *Terry, Adm'r., v. Stull,* 20 *Del. Ch.* 39, 169 *A.* 739.

The interrogatories attached to the complainant's petition were:

1. Did D. M. Barringer, Jr., on February 15th, 1935, prior to the execution of the contract between George M. Colvocoresses and W. S. Wasserman Co., exhibit to George M. Colvocoresses a document containing formal evidence of his authority to act on behalf of W. S. Wasserman Co.?

2. Did D. M. Barringer, Jr., on February 15, 1935, prior to the execution of the contract between George M. Colvocoresses and W. S. Wasserman Co., exhibit to George M. Colvocoresses any document or paper bearing the signature or signatures of one or more of the officers of W. S. Wasserman Co.?

3. Did D. M. Barringer, Jr., on or prior to February 15, 1935, and subsequent to February 10, 1935, receive any document or paper bearing the signature or signatures of one or more of the officers of W. S. Wasserman Co., and containing formal evidence of his authority to act on behalf of W. S. Wasserman Co.?

4. Did D. M. Barringer, Jr., on or prior to February 15, 1935, and subsequent to February 10, 1935, receive any document or paper bearing the signature or signatures of one or more of the officers of W. S. Wasserman Co., and containing a formal authorization to execute the contract on behalf of the defendant?

5. Did D. M. Barringer, Jr., leave with the firm of Ellinwood and Ross of Phoenix, Arizona, or with W. H. Mackay, Esq., then connected with that firm, the document or paper or a copy thereof referred to in interrogatories 1 to 4 inclusive?

6. Is the document or paper, or a copy thereof, referred to in interrogatories 1 to 4, inclusive, now in the possession of either the said firm of Ellinwood and Ross or of W. H. Mackay, Esq.?

7. Has D. M. Barringer inquired of the said firm of Ellinwood and Ross and of W. H. Mackay, Esq., as to whether or not the document or paper, or a copy thereof, referred to in interrogatories 1 to 4, inclusive, was left with and is in either their or his possession?

The following schedule of document and letters, which the complainant sought to have the defendant produce, was, also, attached to his petition:

1. Minute book of W. S. Wasserman Co., to show: (a) Minutes of election of directors and officers of company from February 1 to February 15, 1935, inclusive. (b) Minutes touching and concerning the negotiations with George M. Colvocoresses in reference to the Congress tailings and dumps.

2. All letters and telegrams from W. S. Wasserman Co., or from any officer or director thereof, to D. M. Barringer, Jr., from February 1, 1935, to February 15, 1935, inclusive, touching or concerning any negotiations between said Barringer and George M. Colvocoresses in reference to the Congress tailings and dumps.

3. The original, or if the original be not available, a copy of the document or paper writing mentioned in interrogatories 1-4.

4. Telegram from D. M. Barringer, Jr., to W. S. Wasserman dated February 25, 1935.

5. Assignment by George M. Colvocoresses to W. S. Wasserman Co., dated March 2, 1935.

6. Letter from D. M. Barringer, Jr., to W. L. Nelson dated March 25, 1935.

7. Copy of letter from George M. Colvocoresses to W. S. Wasserman Co. dated March 22, 1935, and initialed by indicating approval by William H. Mackay.

8. Letter from George M. Colvocoresses to W. S. Wasserman Co., dated May 9, 1935.

In determining whether the evidence in question must be disclosed, the issues raised by the pleadings must be considered. *Terry, Adm'r., v. Stull*, 20 *Del. Ch.* 39, 42, 169 *A.* 739; *Loft, Inc., v. Guth, et al.*, 21 *Del. Ch.* 361, 191 *A.* 879. This is particularly true with respect to the allegations of the complainant's bill. *Terry, Adm'r., v. Stull, supra.* It seeks a decree reforming a contract in writing which was

executed by both parties to the action on February 15th, 1935. It alleges that all of his negotiations, with respect to the subject matter of that contract, were with one D. M. Barringer, Jr., a vice-president of the defendant company, who was acting as its agent in conducting such negotiations; that a prior, definite and specific oral contract had been made by the complainant with Barringer, so acting as the agent of the defendant, but that, in reducing that contract to writing for final execution by both parties on February 11th, 1935, certain material mutual mistakes were made in its terms, so that it did not carry out the prior agreement in certain specified respects.

The defendant's answer admits that Barringer, acting as its agent, carried on the negotiations with the complainant, but denies any contract binding it prior to the written contract of February 15th, 1935, or any mutual mistake in the terms of that contract. In that connection, the defendant's answer, among other things, avers:

1. "* * * the only agreement ever reached with the complainant was the agreement expressed in the written contract, executed by the parties. Defendant further avers that the only agreement between the parties hereto that was approved by the Board of Directors of the defendant was the agreement that was executed by Barringer on behalf of the defendant * * *."

2. "* * * the defendant avers that the only terms that were ever approved by the Board of Directors of the defendant * * * was the written contract that was executed by the complainant and the defendant."

3. "Defendant has no knowledge of the formal evidence of authority * * * referred to (in the complainant's bill), but the defendant admits that the contract therein referred to was executed by the complainant and by Barringer, on behalf of the defendant, on or about February 15, 1935."

4. "* * * The defendant further avers that at the time the contract, which it authorized Barringer to execute on its behalf, was submitted to the Board of Directors, it had no knowledge or any intimation of the matters referred to" in that paragraph of the complainant's bill, which mentions the alleged common mistake of Barringer and Colvocoresses, the complainant.

No exceptions were filed by the defendant company to the third and fourth interrogatories; nor were any such

exceptions filed to the request for the production of documents and papers, incorporated in paragraphs 1a, 3 and 5 of the schedule attached to the complainant's petition.

Exceptions were filed to paragraph 8 of the schedule, and that request for discovery was then withdrawn by the complainant.

The exceptions to the first, second, fifth, sixth and seventh interrogatories are that they merely relate to matters of evidence, and not to ultimate facts; and that they do not relate to evidence manifestly and demonstrably founded on the pleadings in the case, and, therefore, material to the issues raised thereby.

The exceptions to the request for the production of documents and papers in paragraphs 1b, 2, 4, 6 and 7 of the schedule are based on the same ground. Paragraph 4 of the schedule is, also, excepted to on the ground that it relates solely to the defendant's case.

It is apparent from the allegations quoted from the answer that the final authority of Barringer to execute the written contract, signed by the complainant, is conceded, but that his authority to bind the defendant company by any prior agreement is expressly denied. Proof of Barringer's alleged agency both to negotiate with the complainant and to conclude a contract with him, and that such an agreement was, in fact, made before the execution of the written contract in controversy, constitutes the very basis of the complainant's case. Interrogatories 1, 2, 5, 6 and 7, paragraphs 1b, 2 and 4 of the schedule are all pertinent and material to that issue. The defendant, apparently, does not deny the materiality of pertinent questions as to how, when and under what circumstances and with what qualifications the board of directors of that corporation endowed Barringer with authority to both negotiate and conclude a contract with the complainant, or that most of the discovery sought is within that class; but it does contend that mere evidentiary matters of that nature are not ulti-

mate facts, and that the discovery of such facts should not be required. I am unable, however, to agree with that contention.

Paragraph 6 of the schedule requests the production of a letter, dated March 25th, 1935, written by Barringer to Nelson, who appears to be the treasurer of the defendant company. A copy of a letter of that date is attached to the complainant's bill and perhaps it can be assumed that that is the letter in question. It, among other things, states:

"I enclose copy of a letter which Colvo has written me tendering his resignation and which I have signed as indicating acceptance. The letter has been approved by Mackay and I think you will find that it covers all of the points under our agreement with Colvo and also under Bill Wasserman's insistance upon postponing the cash payment until the title is quieted."

A copy of the letter of Colvocoresses ("Colvo"), the complainant, enclosed in this letter and referred to in paragraph 7 of the schedule, is, also, probably the same letter attached to the complainant's bill, in which he stated that he elected to resign, and, also, that his understanding was that, on acceptance of his resignation, he would be entitled to certain cash payments "in lieu of a stock interest." In that letter he asks the defendant to confirm the same "by letter or on one of the carbons of this letter." Under the word "accepted", at the bottom of the letter, the alleged signature of D. M. Barringer Jr. appears. The possession of these letters is not only admitted by the defendant's exceptions to the complainant's petition, but by its answer to the bill. The precise ground on which the complainant contends that they are admissible does not appear, but they seem to be material to certain phases of his case.

Under the contract alleged to have been made before the execution of the written instrument, sought to be reformed, the complainant would be entitled to be paid a specified sum of money on his resignation as engineer for the defendant company. That he resigned must, therefore, be shown. The letter referred to in paragraph 6 and the letter from the complainant to the Wasserman Company, dated

March 22nd, 1935, referred to in paragraph 7 of the schedule, would both seem to be material to show that the resignation of Colvocoresses was communicated to the defendant company. Whether the statements of Barringer in his letter can be ultimately used as admissions by the defendant need not be considered at this time. That can be determined if and when proof of agency, to bind the defendant by the contract relied on by the complainant, is produced. Nor is it necessary to consider, at this time, whether the letter of March 22nd, written by the complainant to the Wasserman Company, is a material circumstance to corroborate the complainant's claim, as to the real terms of the contract between them, and that a subsequent mutual mistake was made in the instrument, as finally executed.

The defendant, also, contents that interrogatories 1 and 2 and paragraphs 5, 6 and 7 of the schedule are attempts to fish for evidence by what amounts to a broad and general cross-examination, which goes beyond the real purpose of discovery in equity. Both in seeking the production of documents and in interrogatories, the complainant has the right to put his inquiries and requests to the defendant in such a variety of ways as to make evasion difficult *(Terry, Adm'r., v. Stull, et al.* 20 *Del. Ch.* 39, 169 *A.* 739,) though there may be limitations on that rule in some cases. This is particularly true where it is apparent that the complainant is merely hoping to find some evidence to sustain a case; but the allegations of the bill are such that this case does not come within that rule. Nor do I regard this conclusion as being inconsistent with the rule applied in *Terry, Administrator, v. Stull, et al., supra.*

The defendant, also, contends that paragraph 4 of the schedule relates to evidence pertinent to its case. Conceding that to be true, the discovery sought would, also, seem to be material to the complainant's case. All of the defendant's exceptions to the complainant's petition are, therefore, overruled.